GREAT NORTHERN CORPORATION and Fibreform Containers, Inc., Plaintiffs/Cross–Appellants,

v.

HENRY MOLDED PRODUCTS, INC., Defendant–Appellant.

Nos. 95–1517, 95–1518.

United States Court of Appeals, Federal Circuit.

Aug. 29, 1996.

Rehearing Denied Sept. 25, 1996.

George H. Solveson, Andrus, Sceales, Starke & Sawall, Milwaukee, Wisconsin, argued, for the plaintiffs/cross-appellants. With him on the brief was Peter C. Stomma.

Joseph A. Brown, Hartman, Underhill & Brubaker, Lancaster, Pennsylvania, argued, for the defendant-appellant. With him on the brief was Christopher S. Underhill. Also on the brief was Dinesh Agarwal, Shlesinger, Arkwright & Garvey, Arlington, Virginia.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

CLEVENGER, Circuit Judge.

Henry Molded Products, Inc. (Henry Molded) seeks review of the decision of the United States District Court for the Eastern District of Wisconsin, *Great Northern Corp. v. Henry Molded Prods., Inc.,* Civil Action No. 92–CV–386 (E.D.Wis. May 22, 1995), which held that: claim 1 of its U.S. Patent No. 5,080,314 (the '314 patent) is invalid due to anticipation, the '314 patent is invalid for failure to disclose the best mode, and Great Northern Corporation (Great Northern)[1] does not infringe the '314 patent. Great Northern cross-appeals and seeks review of the district court's decision that Henry Molded does not infringe Great Northern's U.S. Patent No. 4,195,732 (the '732 patent). We *affirm* the district court's decisions that the '314 patent is invalid for failure to disclose the best mode and that Henry Molded does not infringe the '732 patent.

I

Great Northern is the assignee of the '732 patent which discloses elongated bar members that may be used to support rolls of material such as cellophane or steel. Claim 1, the only independent claim in the patent, recites:

A structure for protectively supporting and spacing rolls of web material in a multi-layer stack, comprising *an elongated bar of expanded foam material* ... said bar hav-

---

1. We refer to Great Northern and Fibreform Containers, Inc., aligned together against Henry Molded in this litigation, collectively as "Great Northern."

ing *a plurality of recesses* located in the side portions of said indentations *to provide a greater flexural cushioning* by said bars when clamped to said rolls. (emphasis added).

Since about 1978, Great Northern has marketed and sold the ROLLGUARD product embodying the invention claimed in the '732 patent.

Given the characteristics of expanded foam, a need arose to make a roll stacker of more environmentally friendly material. In response to this need, Henry Molded developed a molded pulp roll support called the STAKKER and received the '314 patent thereon. At about the same time, Great Northern developed and marketed its own molded pulp roll support called ROLL-GUARD II.

Shortly after Henry Molded was issued the '314 patent, Great Northern filed suit alleging that Henry Molded's STAKKER product infringed Great Northern's '732 patent. Henry Molded counterclaimed alleging that Great Northern's ROLLGUARD II product infringed Henry Molded's '314 patent. After a two week trial, the jury issued the following special verdicts: (1) Henry Molded's STAKKER product does not infringe Great Northern's '732 patent; (2) claim 1 of Henry Molded's '314 patent is invalid due to anticipation; (3) the '314 patent is invalid for failure to disclose the best mode; (4) the '314 patent is not unenforceable due to inequitable conduct; and (5) Great Northern's ROLLGUARD II product infringes the '314 patent.

Upon completion of the jury trial, both parties renewed their motions for judgment as a matter of law. After considering these motions and hearing oral argument, the district court upheld the jury verdicts in all respects except for the jury's verdict that Great Northern's ROLLGUARD II product infringes the '314 patent, which the district court set aside. Before this court, Great Northern seeks review of the jury's determination that Henry Molded's STAKKER product does not infringe the '732 patent;

Henry Molded seeks review of the remaining determinations. We have jurisdiction to review the district court's decision pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## II

■ By special verdict, the jury concluded that Great Northern proved by clear and convincing evidence that Henry Molded's '314 patent is invalid due to failure to disclose the best mode of carrying out the invention because the '314 patent does not disclose the use of diamond indentations (diamonds).[2] Henry Molded asserts that this verdict is erroneous. As explained below, we disagree because substantial evidence supports the jury's verdict on this issue.

■ Title 35, section 112 provides, in pertinent part, that the specification "shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112 (1994). Evaluation of whether the best mode requirement has been satisfied entails two underlying factual inquiries. One must first determine whether the inventor subjectively contemplated a best mode of practicing the claimed invention at the time the patent application was filed. *United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209, 1212, 37 USPQ2d 1388, 1390 (Fed.Cir.1996). If the inventor contemplated such a best mode, one must then determine whether, objectively, the specification adequately discloses that best mode such that those having ordinary skill in the art could practice it. *Id.* Because this best mode inquiry is a question of fact, *In re Hayes Microcomputer Products, Inc.*, 982 F.2d 1527, 1536, 25 USPQ2d 1241, 1248 (Fed.Cir. 1992), our scope of review is limited to deciding whether substantial evidence supports the jury's verdict on this issue, *see Shearing v. Iolab Corp.*, 975 F.2d 1541, 1544, 24 USPQ2d 1133, 1136 (Fed.Cir.1992).

## A

As an initial matter, Henry Molded notes that the best mode requirement relates only

---

**2.** These diamond-shaped indentations (or ribs) provide strength to the molded pulp, in part to prevent it from collapsing while still wet.

to the best mode for practicing the invention and not to "production details." *See Transco Prods. Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 560, 32 USPQ2d 1077, 1084 (Fed.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1102, 130 L.Ed.2d 1069 (1995); *Wahl Instruments, Inc. v. Acvious, Inc.,* 950 F.2d 1575, 1579–80, 21 USPQ2d 1123, 1127 (Fed.Cir.1991). Seizing upon this language, Henry Molded contends that because the diamonds are added during the production process to maintain the shape of the unit while it is still wet so that it does not collapse, the diamonds merely constitute a production detail rather than the best mode of practicing the claimed invention.

Henry Molded is correct that our precedent recognizes the distinction between production details and the best mode of practicing the claimed invention. Our cases, however, employ the term "production detail" in two senses, neither of which supports Henry Molded's argument. We have used the term to refer to commercial considerations such as the equipment on hand, or prior relationships with suppliers that were satisfactory. *See Wahl,* 950 F.2d at 1581, 21 USPQ2d at 1128. Such commercial considerations do not constitute a best mode of practicing the claimed invention because they do not relate to the quality or nature of the invention. Our cases have also used "production details" to refer to details which do relate to the quality or nature of the invention but which need not be disclosed because they are routine—i.e., details of production about which those of ordinary skill in the art would already know. In this latter scenario, the omitted detail constitutes a best mode but the disclosure is deemed adequate because the detail is routine.

According to our precedent, then, we cannot decide whether the diamonds constitute a best mode merely by examining whether the diamonds relate to the production process. Instead, we must determine whether the diamonds relate to the claimed invention or to commercial considerations. The invention claimed in the '314 patent is a molded pulp

member for supporting rolls of material. The record makes clear that, at a minimum, STAKKERs designed to support large-diameter rolls could not be produced without the diamonds. This demonstrates that the diamonds are critical to practicing the claimed invention rather than simply a commercial consideration, such as which supplier to use. *Cf. Dana Corp. v. IPC Ltd. Partnership,* 860 F.2d 415, 418–19, 8 USPQ2d 1692, 1695 (Fed. Cir.1988) (best mode violated when specification did not disclose surface treatment necessary for performance of claimed invention), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). Therefore, we conclude that the diamonds relate to the best mode for practicing the claimed invention.[3]

**B**

We must next determine whether the inventors contemplated this best mode when they filed their patent application. Henry Molded argues unsuccessfully that the inventors did not contemplate the use of diamonds until after the filing date, April 6, 1990. Michael Grubb testified, however, that as of April 6, 1990, the preferred way of making the STAKKER product was to use diamonds. This testimony is supported by Henry Molded's production drawing dated April 6, 1990, which shows diamonds being used on the STAKKER. This constitutes substantial evidence in support of the jury's implicit finding that the inventors contemplated use of the diamonds as of the patent application filing date. *Cf. Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893, 221 USPQ 669, 673 (Fed.Cir.) (law presumes existence of findings necessary to support jury's verdict), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

**C**

Finally, we must determine whether the specification adequately discloses the best mode such that those having ordinary skill in the art could practice it. Both parties concede that the specification makes no mention of the diamonds, and that therefore there is

---

**3.** Whether the diamonds constitute the second type of production detail, i.e., a routine detail, relates to the adequacy of the disclosure, which we address below in subsection C.

no disclosure of the best mode. Despite this lack of disclosure, Henry Molded argues on appeal that the best mode requirement is satisfied because the diamonds are a routine detail—i.e., those of ordinary skill would have known to employ such diamonds even without being explicitly told to do so.

The record before us, however, reveals that Henry Molded never raised this argument at the trial level. We can find no testimony from trial which indicates whether or not the diamonds are routine and known to those of ordinary skill in the art.[4] At oral argument, this court asked Henry Molded's counsel for any record citations which supported its argument. Henry Molded provided none. When Great Northern's counsel was asked whether there was any testimony on this issue, he responded that he had not given it thought because it had not been raised at trial by Henry Molded. On rebuttal, in the face of Great Northern's oral argument and the court's questions, Henry Molded's counsel remained silent on this issue. From this silence, we can only conclude that Henry Molded chose not to litigate this issue at trial and therefore waived it.[5]

In this case, we decline to adjudicate arguments which have not been first presented to the district court. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 821, 24 USPQ2d 1121, 1126 (Fed.Cir.1992). This approach is needed to ensure that "parties may have the opportunity to offer all the evidence they believe relevant to the issues ... [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence." Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). The time to prove that diamonds are routine was with evidence at trial, not with lawyer's argument in the appeal brief. Such an explanation simply comes too late and is offered in the wrong form to the wrong audience.

As part of its appeal, Henry Molded also contests the jury's verdict that claim 1 of the '314 patent is invalid due to anticipation, and the district court's judgment as a matter of law that Great Northern does not infringe the '314 patent. Great Northern, meanwhile, asserts that the '314 patent is also invalid based on obviousness. We need not reach these issues, however, in view of our conclusion that the '314 patent is invalid due to a failure to satisfy the best mode requirement.

### III

On cross-appeal, Great Northern contends that the district court erred in refusing to decide, as a matter of law, that Henry Molded infringes its '732 patent. Specifically, Great Northern argues that our intervening decision in Markman v. Westview Instruments, Inc., 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.1995), aff'd, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), required the

---

4. In its appeal brief, Henry Molded asserts that "[c]o-inventor Moyer testified that it was obvious to add a rib to increase the strength in a molded pulp product." Because Henry Molded does not direct us to a record citation, we can only assume it refers to Mr. Moyer's testimony at pages 1363–64 of the joint appendix where the following dialogue appears:

Q: So it would be obvious to one skilled in the art that's involved here in this patent of Exhibit No. 2, the Henry patent, to add the depressions 30 and 31 and the lands 32 and 33 at the time that you came up with your device?

A: I would say yes. Adding ribs to the part would be a simple, common step, yes.

This testimony, however, relates to the lands and depressions indicated on Fig. 6 of the '314 patent and not to the diamonds. Therefore, contrary to Henry Molded's assertion in its appeal brief, this testimony is not directed at whether one of ordinary skill in the art would know to employ the diamonds.

5. We are comforted in this conclusion by the fact that Henry Molded consented to (and does not challenge on appeal here) jury instructions which stated: "The best mode requirement is not satisfied by reference to the level of skill in the art or to what the prior art disclosed." Pursuant to this instruction's statement of the pertinent law, the jury was directed to ignore whether use of diamonds was well known to those of ordinary skill in the molded pulp art. Given that our precedent requires the adequacy of disclosure to be measured from the perspective of one of ordinary skill in the art, we can only surmise that Henry Molded failed to object to this instruction for the same reason it presented no testimony on the issue: it made a decision that its best arguments lay elsewhere.

district court judge to construe the claims of the '732 patent as a matter of law, and a finding of infringement necessarily follows from the proper claim construction. Although our *Markman* decision indeed requires that the claim be construed as a matter of law, we disagree that a finding of infringement follows in this particular case.

In responding to Great Northern's post-trial motion, the district court judge stated that his independent claim construction would not lead to a different result regarding literal infringement. The district court judge noted that claim 1 of the '732 patent requires an elongated *bar* (i.e., a long piece of a solid substance) made of *expanded foam.* Neither of these limitations are literally present in the STAKKER product, which is hollow rather than solid, and made of molded pulp rather than expanded foam. Contrary to Great Northern's contention, therefore, the properly construed claims preclude, as a matter of law, a finding of literal infringement.

 Great Northern also contends that the STAKKER product infringes claim 1 under the doctrine of equivalents. We agree with both the jury and the district court judge that this is not so. Infringement under the doctrine of equivalents occurs when there exist only insubstantial differences between the claimed and accused products. *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.*, 62 F.3d 1512, 1518, 35 USPQ2d 1641, 1645 (Fed.Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996). In many cases, such infringement occurs when the accused product has substantially the same function, way and result as the claimed device. *Id.* Resolution of this issue is a question of fact, and because this case was tried to a jury, we review the jury's decision for substantial evidence. *Id.* at 1521.

As noted above, the '732 patent requires an elongated bar made of expanded foam whereas the STAKKER employs a hollow support made of molded pulp. Even assuming that these aspects of the STAKKER were deemed to be equivalents, the jury

could have reasonably decided that the STAKKER does not infringe the '732 patent. Claim 1 of the '732 patent contains as a limitation that "said bar [has] a plurality of recesses ... to provide a greater flexural cushioning." The ordinary meaning of "flexural" is "[o]f, pertaining to, or resulting from, flexure." *Webster's New Int'l Dictionary* 831 (1932). "Flexure," in turn, is defined as "1. A flexing or state of being flexed ... 2. Capability of bending." *Id.* Therefore, the function of the recesses in the claimed invention is to provide added flexibility to the otherwise brittle expanded foam bars.[6]

The STAKKER also contains recesses of a sort, which result from the creation of lands. Unlike the flexure required by claim 1 of the '732 patent, however, the recesses in the STAKKER are designed to provide increased rigidity and strength to molded pulp, which is an inherently flexible material. Messrs. Gilley and Moyer testified to this effect, and the jury could reasonably have relied on this testimony to reach its implicit verdict of noninfringement under the doctrine of equivalents, for it could have concluded that the function of the recesses in the claimed and accused devices is not "substantially the same," but in fact, the opposite.

## IV

We affirm the decisions of the district court that (1) Henry Molded's patent is invalid for failure to disclose the best mode and (2) Henry Molded's STAKKER product does not infringe Great Northern's '732 patent. Accordingly, we need not comment on the remaining jury verdicts.

*AFFIRMED.*

No costs.

---

**6.** In addition, the specification states that the "[r]ecesses 26 further serve to provide the flexur-

al properties to member 10."